CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 28 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| NOAH CAMPBELL, a minor, etc. ) | |
|     Plaintiff ) | |
| v. ) | Civil Action No. 4:06cv0030 |
| ) | |
| JANICE RANDALL, et al., ) | By: Hon. Michael F. Urbanski |
|     Defendants ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

This case is before the court for court approval of the infant settlement agreement, including approval of the compromised medicaid lien. The district court referred this matter to the undersigned United States Magistrate Judge on August 24, 2007 to provide a Report and Recommendation setting forth his findings, conclusions, and a recommended disposition pursuant to 28 U.S.C. § 636 (b)(1)(B).

A hearing was held on August 24, 2007. Plaintiff Noah Campbell ("Campbell") was represented at the hearing, and he and his mother appeared personally before the court. Defendants did not appear at the hearing, but represented in writing that they had no objection to the proposed distribution of funds and that the amount of settlement was available for immediate distribution. See Docket No. 41. Likewise, the Virginia Office of the Attorney General, representing the Department of Medical Assistant Services ("DMAS"), a lien holder as to any settlement proceeds, did not appear at the hearing, but likewise represented in writing they had come to an agreement with plaintiff concerning a compromise of the lien. See Docket No. 42.

Having heard the terms of the proposed settlement agreement, as well as counsel's representations as to the merits of the proposed settlement and the compromise of the DMAS

lien, the undersigned recommends that the court approve the infant settlement agreement, including the lien issue. The undersigned concludes the parties' settlement amount of $40,000 represents a full and fair settlement of the underlying matter in consideration of the burdens of trial and the difficulty in recovering any judgment. Further, the undersigned concludes the proposed distribution of the settlement proceeds, namely that $7,500 be immediately disbursed to the Treasurer of Virginia in full satisfaction of the DMAS lien, $7,500 be disbursed to counsel for attorneys' fees, and $1,197.30 be disbursed for payable costs, is appropriate. Furthermore, at Campbell's request, the undersigned recommends that Campbell be allowed to draw up to $5,000 for the purchase of a reliable vehicle and that the remaining proceeds be held by the Clerk of the Court until Campbell's eighteenth birthday.

## I.

This action arose out of injuries sustained by Campbell when he fell through a glass door in a home owned by Janice and James Randall ("the Randalls") and rented by his mother. The glass in the storm door was not tempered, and as a result, Campbell sustained serious lacerations to both upper arms, necessitating emergency medical attention and surgery. At the hearing, Campbell testified that although he is doing well, he has not fully recovered from his injuries. Specifically, he noted that prior to the accident he was right hand dominant, but because of his injuries he has trouble firmly grasping objects with his right hand. Accordingly, he has taught himself to use his left hand for certain activities, including writing.

## II.

At the onset of the hearing, the undersigned appointed Campbell's counsel, Robert L. Morrison, Jr., as guardian ad litem for Campbell in these proceedings pursuant to Rule 17(c) of

2

the Fed. R. Civ. P. and Va. Code § 8.01-9. Counsel proffered the terms of the settlement agreement as well as the rationale for the settlement.

First, counsel detailed the rationale for accepting such a relatively low settlement amount, $40,000, in consideration of the significant and lasting injuries Campbell suffered. Counsel explained that there are several unresolved factual issues in this matter which make this a hard case to win at trial, including (1) the circumstances under which the original glass panel in the door was broken; (2) who removed the broken panel and took the panel to the glass shop to be repaired; (3) who installed the non-tempered glass into the panel; (4) who reinstalled the glass panel, with non-tempered glass, back into the door; and (5) whether Campbell's own actions contributed to his injuries. It is worth noting that both defendants and plaintiff's mother denied replacing the glass. Counsel lamented that despite significant efforts to identify the commercial entity, if any, that placed non-tempered glass in the door panel, no such identification was possible. Indeed, counsel noted that when suit was originally brought in state court, a commercial glass installer was named as a defendant, but this installer was later dismissed before the case was removed to federal court. Counsel also indicated the issue of contributory negligence, which would wholly bar any recovery, could also have made this case difficult to win. Counsel stated that should Campbell be successful at trial, there were substantial burdens to collecting any award. Specifically, (1) at the time of the injury, the Randalls did not have any liability insurance; (2) the Randalls threatened to file bankruptcy should any sizeable amount of damages be awarded; and (3) the Randalls reside in North Carolina, which has less favorable debt collection laws than Virginia, and therefore, the collection of any judgment would be exceedingly more difficult than if collection efforts would have been made in Virginia.

3

Case 4:06-cv-00030-JLK-mfu    Document 46    Filed 08/28/07    Page 3 of 6    Pageid#: 151

Second, counsel detailed his efforts to compromise the DMAS lien. The original lien was for $11,309.59, and counsel made efforts to compromise the lien for $1,500, representing a reduction proportionate to the amount recovered and the ad damnum. However, the Office of the Attorney General rejected this proposal and stated that their policy is not to compromise a lien for less than the attorneys' fees recovered. Counsel stated that the Office of the Attorney General advised that if a lesser lien amount was approved by the court, the Office of the Attorney General would appeal the lien reduction to the Fourth Circuit, which was not in his client's interests. Based on this information and in an effort to maximize his client's recovery, counsel reevaluated his fee arrangement. The original fee agreement provided for counsel to receive a fee of 25% of any settlement recovery; as such, counsel was entitled to $10,000 of the proposed settlement. However, he reduced his fees to $7,500, and the Attorney General reduced the DMAS lien to $7,500. According to counsel, he discussed the compromised attorney's fee and DMAS lien with Campbell and his mother, and all agreed this was acceptable.

Having heard such evidence from counsel, the court heard from Campbell and Campbell's mother as to their understanding of the terms of the settlement. Both advised the court they understood the terms of settlement and agreed it was the best thing to do given their understanding of the evidence in the case and the pros and cons of proceeding to trial. Both Campbell and his mother stated that they understood and agreed to a compromise of the DMAS lien to an amount equal to the compromised attorney's fee, and they were fully satisfied with counsel's representation. Additionally, Campbell asked the court to allow him to have up to $5,000 of the settlement proceeds to purchase a reliable vehicle. Campbell testified that he is a rising junior in high school, he maintains a 3.2 GPA, he plays for the school's varsity baseball

4

team as a first baseman, and he also has an after-school job in a cafe. Campbell also stated that he plans to go to college after graduating, and he needed a reliable personal vehicle to allow him to continue to participate in all of his current after-school activities and work.

### III.

Having heard the evidence, the undersigned concludes that the settlement amount of $40,000 represents a fair compromise of the underlying matter in light of the substantial factual and legal issues as well as the significant difficulties collecting any judgment would pose. Further, the undersigned concludes that although the DMAS lien has not been compromised proportionately to the settlement amount, the court should not further reduce the lien, but instead should approve the lien as compromised. The undersigned so finds because Campbell and his mother both agreed to the compromised amount and the Virginia Office of the Attorney General has indicated it would appeal any further reduction, thereby causing Campbell to further reduce his recovery in defending the lien reduction. Finally, the undersigned finds that counsel has compromised his fee to significantly less that the originally agreed upon contingency fee and that his fee is reasonable. Accordingly, it is hereby recommended that the court approve the proposed infant settlement agreement, including the amount of the medicaid lien.

Furthermore, in light of Campbell's scholastic achievement as well as his extracurricular activities and goal of attending college after graduation, the undersigned recommends that the court approve the disbursement of up to $5,000 to allow Campbell to purchase a reliable vehicle. As such, the undersigned recommends that the settlement proceeds of $40,000 be disbursed as follows, (1) $7,500 payable to the Treasurer of Virginia representing full payment of the compromised DMAS lien; (2) $7,500 payable to Williams, Morrison, Light, & Moreau

5

representing full payment of all attorneys' fees associated with this cause of action; (3) $1,197.30 payable as directed by Williams, Morrison, Light, & Moreau for costs incurred in this cause of action; and (4) up to $5,000 payable to Campbell for purposes of purchasing a reliable vehicle. The undersigned further recommends that all remaining proceeds be held by the Clerk of the Court until Campbell's eighteenth birthday.

Finally, the undersigned recommends that all pending motions be denied as the court's acceptance of the terms of the settlement agreement, including the lien issue, will moot such motions.

The Clerk of the Court is directed to immediately transmit the record in this case to Hon. Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 28 day of August, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge